1                 UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF INDIANA
2                     HAMMOND DIVISION

3    UNITED STATES OF AMERICA,      )
                                    )
4    vs.                            ) 2:08-CR-194
                                    )
5    JAMES A. CIAMMETTI,            )

6         TRANSCRIPT OF EVIDENTIARY HEARING/DETENTION HEARING
                         April 6, 2009
7            BEFORE THE HONORABLE PAUL R. CHERRY
                UNITED STATES DISTRICT MAGISTRATE
8

9    A P P E A R A N C E S:

10   FOR THE GOVERNMENT:

11                      DAVID CAPP
                        Acting United States Attorney
12                      BY:  JILL R. TRUMBULL-HARRIS
                        U.S. Attorney's Office
13                      5400 Federal Plaza, Suite 1500
                        Hammond, Indiana  46320
14                      (219) 937-5500

15   FOR THE DEFENDANT:

16                      STEPHEN E. SCHEELE
                        Goodman, Katz & Scheele
17                      9013 Indianapolis Boulevard
                        Highland, Indiana  46322
18                      (219) 838-9200

19   ALSO PRESENT:      David Beier
                        Pretrial Services Officer
20

     Court Reporter:         Stacy L. Drohosky, RPR, CSR, CRI
21                           Official Court Reporter
                             United States District Court
22                           5400 Federal Plaza, Suite 4005
                             Hammond, Indiana  46320
23                           (219) 852-3462

24   Proceedings reported by stenotype from audio CD.  Transcript
     produced by computer-aided transcription.
25

1

2          THE COURT:  This is the case of the United States of

3    America versus James Alan Ciammetti.  The case number is

4    2:08-CR-194.  Today's date is April 6, 2009.  Present for the

5    hearing today is the United States Government by Assistant

6    United States Attorney Jill Trumbull-Harris.  The defendant,

7    Mr. Ciammetti, is here in person.  He is in the custody of the

8    United States Marshal.  He's with his attorney Stephen Scheele,

9    and Pretrial Services Officer David Beier is here.

10        There's an Indictment pending in this case.  The

11    initial appearance has been held.  We are scheduled today

12    for detention hearing and arraignment.

13        Mr. Ciammetti, for the court hearing today, do you

14    swear or affirm to tell the truth, the whole truth, and

15    nothing but the truth so help you God?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Steve, can you get that mic over?

18          MR. SCHEELE:  Yes.

19          THE COURT:  Thank you.

20          THE DEFENDANT:  Yes.

21          THE COURT:  Just for the recording, are you James

22    Alan Ciammetti?

23          THE DEFENDANT:  Yes.

24          THE COURT:  What's your date of birth?

25          THE DEFENDANT:  The 6th of September, 1967.

1          THE COURT:  Are you a United States citizen?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Do you read, write, and understand the

4    English language?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Have you put any alcohol or legal drugs

7    or illegal drugs into your body in the last 24 hours?

8          THE DEFENDANT:  Medicine was given to me yesterday

9    evening at about 11 p.m.

10          THE COURT:  Do you recall what it is?

11          THE DEFENDANT:  Um, it was -- I do not recall, I'm

12    sorry.

13          THE COURT:  Was it either prescribed or given to you

14    by a physician?

15          THE DEFENDANT:  Yes, from the nursing staff at the

16    Lake County Jail.

17          THE COURT:  Do you recall the purpose of the

18    medication?

19          THE DEFENDANT:  I'm trying to remember which one it

20    was.  It was the Celebrex medicine.

21          THE COURT:  Would the fact that you took that affect

22    your ability to understand the proceedings today?

23          THE DEFENDANT:  No.  No.

24          THE COURT:  Aside what you mentioned in court to me

25    before and other hearings, do you have any physical condition

1   or mental condition that might make it difficult for you to

2   understand these court proceedings and to participate?

3           THE DEFENDANT:  Nothing different or in addition to

4   what had already been mentioned, no, sir.

5           THE COURT:  We'll talk about the detention issue for

6   just a moment now.  The purpose of the detention hearing, and

7   that is one of the hearings scheduled for today, is for me to

8   determine if there's any condition or combination of conditions

9   that will reasonably assure your appearance in court as

10  required and assure the safety of any other person in

11  particular and the safety of the community in general.  I

12  consider several factors when I make the detention decision.

13      Among the factors that I consider are these:  The nature

14  and circumstances of the charges against you; also the weight

15  of the evidence against you; also your history and

16  characteristics, including criminal history, if any; also

17  whether you were on probation, parole, bond, conditional

18  release, or other court supervision for another offense at the

19  time that these offenses are alleged to have occurred; also the

20  nature and seriousness of the danger to any person or to the

21  community in general that would be posed by your release.

22      Finding by me that no condition or combination of

23  conditions would reasonably assure the safety of any other

24  person in particular or the safety of the community in general

25  must be supported by clear and convincing evidence.  A finding

1    by me that no condition or combination of conditions will

2    reasonably assure your appearance in court need only be

3    supported by a weight of the evidence.

4         Do you think you understand that information about the

5    detention part of today's court hearing?

6              THE DEFENDANT:  Yes.

7              THE COURT:  During this court hearing today, no

8    matter what the issue is, you have several important rights.

9    They include, the right to be represented by a lawyer; the

10   right to testify on your own behalf, if you want to; the right

11   to present witnesses to testify in your favor, if there are

12   any; the right to cross-examine any witnesses the government

13   may call to testify; the right to present information to me

14   through your lawyer; and you do have the right to remain

15   silent.  You don't have to say anything at all during this

16   hearing if you don't want to.  This hearing is being recorded.

17   Anything you say during this hearing can and probably would be

18   used against you later by the government if possible.  You may,

19   at any time during this hearing, speak privately with your

20   lawyer.

21        Do you understand all of these rights you have at today's

22   proceeding?

23              THE DEFENDANT:  Yes.

24              THE COURT:  Mr. Scheele, did you and your client

25   receive a copy of the Pretrial Services Report?

1          MR. SCHEELE:  We did, Your Honor.

2          THE COURT:  Have you had a chance to review it with

3   your client?

4          MR. SCHEELE:  I have reviewed it with my client, Your

5   Honor.  However, if I may note, before we get to the issue of

6   detention and/or arraignment in this case, I do have a request

7   that I would like to make to the Court wherein, suffice to say,

8   I have some concerns as to some mental-health issues

9   surrounding my client; and I am interested in having him

10  evaluated with respect to these mental-health issues.

11      And I'm prepared, at this point, to make an oral

12  motion to the Court for a psychological evaluation; and I

13  can explain to the Court in some greater detail, if the

14  Court so pleases, as to my reasons for requesting this.

15  But basically this request would be made pursuant to 18

16  United States Code 4241, in essence, for competency and

17  psychiatric and psychological evaluations to be conducted

18  on him.

19          THE COURT:  Competency only and not insanity?

20          MR. SCHEELE:  To the extent that the staff is able to

21  render any sort of an evaluation with respect to his

22  understanding of wrongfulness, if you will, at the time, I

23  believe that that may be of some assistance as well.  So, yes,

24  actually --

25          THE COURT:  It sounds like you're asking for both

1  then?

2          MR. SCHEELE:  Sure.  Yes.

3          THE COURT:  Do -- is it your intention or

4  understanding to go ahead with the detention hearing today

5  however?

6          MR. SCHEELE:  If the Court is inclined to grant my

7  motion with respect to this evaluation, then I think that it

8  would perhaps make sense to withhold from the arraignment and

9  detention portions of the proceedings until after we receive

10  that evaluation.  However, I do defer to the Court.

11      I can advise the Court that it is our intention to waive

12  the detention issue; and, furthermore, we were going to tender

13  pleas of not guilty as to all counts in the Superceding

14  Indictment.  So however pleases the Court.

15          THE COURT:  Ms. Trumbull-Harris, do you -- does the

16  government have any position at this point?

17          MS. TRUMBULL-HARRIS:  We would like to hear the

18  proffer from defense counsel regarding his basis for believing

19  his client's not competent and potentially insane at the time

20  he committed the crime.  We also, depending on the proffer,

21  will probably have an objection.

22          THE COURT:  Mr. Scheele, do you wish to make that

23  explanation in open court or in a sidebar conference?

24          MR. SCHEELE:  I would prefer to do it in a sidebar

25  conference, Your Honor, if I may.

1          THE COURT:  I do want it recorded, so are we able to

2     do a sidebar conference and have it recorded?

3          (No audible response given.)

4          THE COURT:  Well, of course, Mr. Scheele, I don't

5     know what you're about to say in terms of reasons for your

6     motion, but I think it might be appropriate if you want to

7     consider orally moving to seal a portion of the hearing, and

8     only the portion of your explanation, and that might be

9     appropriate.

10         And let me just state for the record, I've just been

11    informed that we cannot technologically and practically record

12    a sidebar conference here at this time in this hearing because

13    we don't have an official court reporter in the room.  Normally

14    then I think we would be able to do that, but we haven't

15    arranged for an official court reporter.

16         MR. SCHEELE:  I would so move then, Your Honor, with

17    respect to the proffer that would pertain to the bases upon

18    which I would be moving for this psychological evaluation.

19    Pursuant to 18 United States Code 4241 I would ask that the

20    court seal these proceedings.  They do -- what I'm about to

21    proffer does involve some matters of -- that would generally be

22    considered to be of a confidential nature with respect to my

23    client's health and mental health style issues.

24         THE COURT:  And before I rule on that motion,

25    Ms. Trumbull-Harris, does the government have any position or

1    comment?

2            MS. TRUMBULL-HARRIS:  May I have a moment?

3        (No audible response given.)

4            MS. TRUMBULL-HARRIS:  Your Honor, there is a

5    representative of the victim in the courtroom and also a member

6    of the staff of our office.  We don't believe that they should

7    be excluded from the courtroom.  The victim has the right to be

8    present during all court proceedings, and so we would ask the

9    victim's representative and the person from our office, who is

10   assisting with victim-related issues, be allowed to stay in the

11   courtroom.

12           MR. SCHEELE:  Your Honor, I assume that the member of

13   the government's staff that is here today is Miss Sally Haviar.

14   I have no objection to her remaining in the courtroom.  With

15   respect to anybody else, the public at large and so forth, I

16   would ask that they be excluded.

17           THE COURT:  I now grant the oral motion to seal a

18   portion of these proceedings, and I'll now exclude, just for

19   this portion of the proceedings, the general public and the

20   news media.  The staff person associated with the United States

21   Attorney's Office will be able to remain in the courtroom.

22   Certainly court security and probation staff, pretrial staff,

23   will remain, and the victim -- one of the victim's

24   representatives.  I'm not exactly sure of the relationship.  Do

25   you know?

1        MS. TRUMBULL-HARRIS:  That's a close family member,

2   Your Honor.  It is a parent of the victim.

3        THE COURT:  Then he may remain in the courtroom.

4   So -- everyone else, we'll let you know.  It should probably

5   just be a couple minutes, and we'll have you come back in.

6        MS. TRUMBULL-HARRIS:  I guess it wasn't clear on the

7   record if the case agent is allowed to stay in the courtroom.

8        THE COURT:  No problem.  He can stay.

9      The record will now show that the general public and the

10  news media have been excluded from the courtroom.  Those still

11  in are -- in the courtroom are the people that I mentioned a

12  moment ago and necessary court staff and court security.

13     (Whereupon there was a portion of the proceedings deemed

14        to be sealed and not for public inspection.)

15     (Whereupon the proceedings resumed in open court, reported

16        as follows:)

17        THE COURT:  At this point in the proceedings, this

18  hearing is now unsealed again.

19     Mr. Ciammetti, I want to ask you a few questions; but

20  before I have you answer them, I want to remind you that

21  you have the right to remain silent.  You don't have to

22  say anything at all during this hearing if you don't want

23  to.  This hearing is being recorded.  Anything you say

24  during this hearing can and probably would be used against

25  you later by the government if possible.  Do you

1   understand that?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Also, you can pick and choose.  You can

4   decide to answer a question -- one or more questions of mine

5   and yet you can decide to not answer other questions of mine.

6   Do you understand that?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Okay.  Also, before you answer any of my

9   questions, you may privately talk with your lawyer there at the

10  table, and we won't listen to the conversation.  Do you

11  understand that?

12         THE DEFENDANT:  Yes.

13         THE COURT:  Your lawyer has made an oral motion that

14  I order you to be evaluated for two main issues, one is your

15  competency to stand trial, meaning mental competency to stand

16  trial, the other main issue is your sanity at the time of these

17  alleged offenses.  What is your position, if you want to tell

18  me, on this oral motion?

19         THE DEFENDANT:  (No audible response given.)

20         THE COURT:  Or do you have questions?

21         THE DEFENDANT:  When -- when the attorney came

22  yesterday and we spoke for a bit of time, I -- I very much

23  didn't want to go for any sort of evaluation when it was

24  made -- when he had made himself understood to me that it would

25  be at a different location and having to travel and go

1  someplace else and being in a new place and -- the terrible

2  anxiety in being yet another pattern or routine, having to

3  learn, and going to a place that would be far away.  And when

4  he had mentioned that, I very -- very strongly -- very strongly

5  tried to word that it was something I did not wish at the time.

6        THE COURT:  Sitting here today, how do you feel about

7  that motion as opposed to yesterday?

8        THE DEFENDANT:  The feelings would be the same, I

9  think; but as the feelings are -- are subjective rather than

10  objective, that's difficult to quantify.  Um, I've gotten

11  accustom to some of the rules and what is expected at Lake

12  County Jail; and although things are not sometimes easily

13  understood, there are routines and patterns that I've gotten

14  accustom to.  And further change from that would be -- I would

15  not like.

16        THE COURT:  How far did you go on formal schooling?

17        THE DEFENDANT:  I had -- I have achieved a

18  baccalaureate degree and also a masters degree and had done

19  course work beyond the masters degree and was last -- last year

20  I was looking towards perhaps doctoral studies.

21        THE COURT:  From what institution did you receive

22  your bachelors degree?

23        THE DEFENDANT:  It was the Vandercook College of

24  Music.

25        THE COURT:  What year?

1          THE DEFENDANT:  I don't remember the year.

2          THE COURT:  Where is the institution located?

3          THE DEFENDANT:  It is on the campus of the Illinois

4    Institute of Technology.

5          THE COURT:  In Chicago?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Did you receive -- did you have a major

8    or some kind of concentration in your academic work?

9          THE DEFENDANT:  It was music education.

10          THE COURT:  From what institution did you receive

11    your masters degree?

12          THE DEFENDANT:  The same institution.

13          THE COURT:  And what major or concentration was that?

14          THE DEFENDANT:  The same.

15          THE COURT:  And you've taken further coursework?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Same institution?

18          THE DEFENDANT:  No.  Through Indiana Wesleyan with

19    regards and with respect to the continuing credits that are

20    necessary for Indiana licensure.

21          THE COURT:  Teaching licensure?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Have you ever been treated for any mental

24    illness?  I say treated for any mental illness.

25          THE DEFENDANT:  I'd rather not talk about that.

1      THE COURT:  Have you been diagnosed by a physician as

2  having Asperger's syndrome?

3      THE DEFENDANT:  (No immediate response given.)

4      MR. SCHEELE:  Your Honor, may I represent to the

5  Court he has seen many doctors.  He's uncertain of the actual

6  diagnoses.  These were attempts at -- or by his mother, who is

7  now deceased, to try to get a handle on, if you will, of

8  whatever his mental-health conditions were.  And it was

9  something that she and the family were always embarrassed

10  about, if you will; and it was something that they tried to

11  keep unknown to others.  And his recollection of all of the

12  doctors who he has seen and the diagnoses that he has received

13  from those doctors is something that he is uncertain of.  So he

14  doesn't know that there has ever been a formal diagnosis of

15  Asperger's syndrome, but it is his understanding that that is

16  what he has.

17      THE COURT:  Mr. Ciammetti, what is the basis of you

18  coming into court and saying you do have Asperger's syndrome?

19      THE DEFENDANT:  There -- there were -- at the time of

20  my mother's death, my sister had come for the wake and funeral,

21  and it was a matter of helping and assisting my father to go

22  through her personal effects and the giving of her clothes to

23  charity and so on and so forth and had come across a number of

24  books and manuals and some different medical things that I

25  didn't know that my mother had about me.  But there was things

1    underlined and things highlighted and some things were in the

2    margins and, um -- we had gone to -- mother was very angry

3    because I was --

4         THE COURT:  Mr. Ciammetti, I don't think we need to

5    get into a lot of detail, but it sounds to me like you're

6    saying the basis of you telling me in court that you have

7    Asperger's syndrome is that your family and mother apparently

8    had quite a few manuals and books about that and papers about

9    that, is that fair?  I mean, is that the answer to my question?

10        THE DEFENDANT:  I suppose so, yes.

11        THE COURT:  Do you think that you understand the

12   nature and consequences of these court proceedings?  And when I

13   say, "these court proceedings," I mean the nature and

14   consequences of the fact that you've been charged with

15   committing federal crimes and this series of court hearings in

16   this case.  Do you think you understand the nature and the

17   consequences of this case?

18        THE DEFENDANT:  Understanding and comprehension of

19   things on an academic level is fairly easy, especially if it is

20   in written form.  It is -- it is far more difficult to

21   understand communicative things, dynamics of literalism versus

22   figures of speech, ability to communicate and establish

23   friendships and/or personal relations, the understanding of

24   things of that nature; but as to being able to academically

25   read and understand the meanings of -- of -- of sentences,

1   that's fairly straightforward.  The ramifications of those

2   sentences, perhaps, would not always be immediately clear; and

3   perhaps with use of a dictionary, if necessary, words that I do

4   not know could be looked -- could be discovered -- the meaning

5   could be discovered within the dictionaries or reference

6   materials.

7          THE COURT:  Do you understand the charges against you

8   in this case, what they are?

9          THE DEFENDANT:  There's -- there are phrases and

10  terms that are in the -- as -- as the attorney explained

11  yesterday, that are considered legalese and we had to go over

12  quite a bit of it and -- to the point of even summarizing and

13  using a highlight marker so that I could come to a better

14  understanding of the wording.

15         THE COURT:  In layman's terms, or in your own words,

16  what is your understanding of what the charges are?  And you

17  don't have to list them or talk about them in legal terms

18  necessarily; but just in your own words, what do you think the

19  charges are against you?

20         THE DEFENDANT:  Improper relations with someone under

21  the age of 18.

22         THE COURT:  Do you understand the consequences if you

23  should be convicted; that is, found guilty?

24         THE DEFENDANT:  There were a lot of numbers that the

25  attorney presented to me yesterday and some things which -- one

1    thing will affect another but if a third thing is -- comes

2    before the second thing then the second thing is subject to

3    other variables and it's -- it's rather detailed, but given

4    perhaps some time to study, I think I can come to a better

5    bearing of the interconnectedness of the different things.

6           THE COURT:  As this case unfolds and moves forward,

7    your attorney is one of the most important people in your life

8    at this point.  Do you think that you're able to reasonably

9    assist your attorney in preparing your defenses or defense and

10   in representing you at trial?  Are you able to assist your

11   attorney?

12          THE DEFENDANT:  (No immediate response given.)

13          THE COURT:  By assist, I mean primarily I'm talking

14   about --

15          THE DEFENDANT:  Yes.

16          THE COURT:  -- communicating with him --

17          THE DEFENDANT:  I'm --

18          THE COURT:  -- to assist him.

19          THE DEFENDANT:  -- forming my answer.  Um, it is -- I

20   believe I was -- yesterday I was making a very -- very forward

21   and very strong straightforward position with assisting my

22   attorney yesterday with things, but that was the opinion I had.

23   I had the opinion that I was as helpful as I could be with

24   coming forth with answers to questions and to cooperating with

25   acknowledgments of certain details and facts.  Later in the

1   meeting when the idea of going to a different place and being

2   reviewed was brought up, I didn't want to go and he had

3   mentioned that it was necessary for him and for the defense.

4   And I just don't know the law with regards to that, so I -- I

5   have to defer to his experience and his, a, pedigree and

6   training with regards to that even though I don't -- I don't

7   want to.

8           THE COURT:  My inclination, Mr. Scheele, is to move

9   forward with detention hearing today, to not have the

10  arraignment today, to deny your oral motion for the sole reason

11  that I would prefer it in writing, so the denial would be

12  without prejudice, and to give you an opportunity to file a

13  written motion, if you choose to do so, and I assume you

14  probably will, and then to let the government file a written

15  response and then rule as quickly as possible on your motion.

16      Now, I just said that's my inclination, those aren't

17  rulings yet, but it's giving us some guideposts here for the

18  next few minutes.

19      Do you have any response to those thoughts?

20          MR. SCHEELE:  I do, Your Honor.  With utmost respect

21  to Your Honor and everybody in this room, I think that what

22  perhaps the Court is wanting to define is whether or not he is

23  competent, and I don't think that any of us have that ability.

24  I think that this is something that is provided for in the law.

25  It is something that quite frankly -- that rare instances in

1    which I've had to have somebody evaluated, it was never an

2    issue of contest.  The government in my past experience has

3    always quite readily agreed to see that an evaluation is made.

4    The substance of what comes from these evaluations is something

5    that is shared with the Court and with both parties, and it's

6    not as if we're -- I'm seeking some sort of an independent

7    evaluation that if I don't like what it says I'm going to bury

8    it and not share it with anybody or what have you.

9        I think that the basis for my request, certainly in good

10   faith, and it is an effort to have the people who know about

11   these things be able to tell us what is going on here, and

12   that's why I've made the request.  And I believe that there is

13   no prejudice to be had anywhere.  We are not talking about an

14   extended length of time for what it would take to accommodate

15   this evaluation.  This case can be just as well fast tracked,

16   you know, thereafter as it needs to be or the government wants

17   it to be.  And, again, I really think that it behooves all of

18   the parties and the Court to get this evaluation done.

19            THE COURT:  Ms. Trumbull-Harris, do you have any

20   response to those inclinations that I just stated?

21            MS. TRUMBULL-HARRIS:  Your Honor, I think that your

22   inclination is sound.  The government would have no objection

23   to proceeding with a written motion by defense counsel to which

24   we would respond in writing and to holding the detention

25   hearing today but waiting for the arraignment until the ruling

1  on that motion.

2       If I may respond briefly to what defense counsel just

3  argued, the government isn't questioning that he is making this

4  request -- that he has a good-faith basis in making it in his

5  mind based on his experience.  Hopefully he understands -- the

6  defense understands that the government's objections are made

7  with an eye toward its own knowledge of the facts of the case

8  and desire to move this case forward for the benefit of the

9  victims as required by law in a case like this.

10       If -- if a defendant could simply come into court and say,

11  I've never, that I know of, been diagnosed but I believe based

12  on finding books in my mom's house about Asperger's, that I

13  have Asperger's and that I believe that therefore I may not be

14  able to assist in my defense, then it would be the case that

15  the Court would always have to grant this motion in every case

16  if that's all that's needed to get us to that point.  It is

17  going to cause a significant delay in this case.

18       As the Court is aware, in another recent case, I think it

19  was two weeks ago, on or about March 6th, a motion was made for

20  just this type of exam in another case.  The government did not

21  object because we do have basis to believe that it may be

22  appropriate in that case, and the hearing for the Court to

23  determine competency was set in August.  And that was a

24  situation where the exam was already ordered; and, in fact, we

25  know that the wheels are turning on the exam because we were

1    contacted by the examiner's office last week.  But still it is

2    going to be August until that's decided.  So we do think this

3    is going to cause a significant delay, and if defense counsel

4    wants to provide in writing perhaps a stronger basis for

5    believing that the competency and insanity -- or sanity of his

6    client is truly in question, I think that would be the

7    appropriate way to proceed.

8            THE COURT:  The downside of having briefing instead

9    of today's oral argument and a prompt ruling today is that if I

10   were to ultimately, after briefing it, grant the motion, that's

11   just delayed the whole case further.

12           MR. SCHEELE:  I can assure the Court that in the

13   event that -- this is not a threat by any stretch.  In the

14   event that I am -- that we, the defense, are not going to be

15   availed of this opportunity that I've requested under the law,

16   that I am going to have to have my own doctor take a look at

17   him.  And based upon past experience, that takes longer and is

18   generally more expensive than this avenue as provided for under

19   18 U.S.C. 4241.  Bureau of Prisons has this facility.  I

20   believe it is in Springfield, Missouri, and this is what they

21   do, they review these issues.  And I think that they -- reports

22   that I've seen generate from there, based upon my experience

23   again, it -- they do it well.  They do it right.  They do a

24   good job.  They do it in a timely fashion and so forth.  If

25   I -- I guess the alternative would be, and I've picked and

1    chosen the different alternative and the various alternatives

2    in prior cases, I just know if I have to get, you know, a local

3    doctor here who's going to need to be conferring with him at

4    the jail and so forth and generation of those reports and the

5    appropriation of the monies to be able to pay that independent

6    expert and so forth, it just -- it's a mess.  That is a reason

7    why, after consulting with my client yesterday, and pondering

8    throughout the course of that consultation, as well as

9    overnight in anticipation of today's hearing, I thought that

10   this was the most cost effective, the most time effective, and

11   it gets us all to where we need to be, which I think is going

12   to be a very good and fair indication of the issues that I've

13   requested for evaluation.

14            THE COURT:  Anything else, Ms. Trumbull-Harris?

15            MS. TRUMBULL-HARRIS:  No, Your Honor.

16            THE COURT:  Okay.  Despite what I said my

17   inclinations were a few moments ago, I now grant the oral

18   motion made by the defendants for an evaluation.  I find that

19   there is the reasonable cause that is referred to in 18 United

20   States Code, Section 4241.

21      I do ask, Mr. Scheele, that you follow it up with a

22   written motion, and I will follow up this oral granting with a

23   written order.  I say that, I guess, primarily because

24   18 United States Code, Section 4241(a) talks about, "file a

25   motion."  So I feel better if it was in writing.

1      Now, Mr. Ciammetti, your lawyer has indicated --

2  well, before I do that, Mr. Scheele, is it okay if we go

3  ahead with the detention issue?

4          MR. SCHEELE:  I think that's fine; and as I indicated

5  to the Court earlier and the government prior to this hearing,

6  we would waive the detention issue at this time.  Although I

7  would like to leave that door open, if you will, if and when,

8  although I don't expect it, but if and when circumstances may

9  change such as to perhaps warrant a review of the detention

10  issue, I would file a motion with the Court at such time.

11          THE COURT:  Mr. Ciammetti, your lawyer has indicated

12  that you're willing to waive or give up your right to a

13  contested detention hearing and agree to detention under the

14  circumstances.  Do you agree with that?

15          THE DEFENDANT:  (No immediate response given.)

16      Um, I -- I -- I guess we talked about that yesterday and

17  it was decided that Mr. Scheele's decision would be the right

18  one.

19          THE COURT:  But do you agree with it?

20          THE DEFENDANT:  Um, as it was explained to me, I --

21  I -- um -- I understand that it has to do with the bonding and

22  with finances to secure that and, um -- um, seeing that, um --

23  yes, I -- I believe that I'm in agreement.

24          MR. SCHEELE:  And, Your Honor, if I may, to further

25  represent to the Court, it's my understanding that there are

1   some companion state court charges that have been filed.  They

2   arise basically out of the same offense conduct, but there's

3   matters pending in the state court as there are now in this

4   federal court.  There's a $16,500 cash bond that must be posted

5   for his release from state court.  So even if this Court were

6   to decide to go ahead and give him some sort of a bond in this

7   matter, he would still be held up over there on the state

8   charges.

9        That being so, as he and I discussed yesterday, the

10  detention issue here is essentially mute until and/or unless

11  he's able to come up with the financial means there in state

12  court, which it's my understanding that there is absolutely no

13  chance of that occurring.  And so that is why I indicated to

14  the Court earlier that as part of the decision to waive this

15  detention issue, in the event that circumstances changed, then

16  I would so motion -- or I would so advise the Court.  I would

17  really see a condition prerequisite to that, if you will, being

18  that he'd have to post the bond out there and even then he

19  wouldn't be released because the detention order here, then I

20  perhaps at that point would move the Court to reconsider the

21  detention order here in federal court.  I've explained that.  I

22  believe that my client understands that, and I believe that's

23  what he was just attempting to communicate to the Court.

24            THE COURT:  Mr. Ciammetti, you agree that under these

25  circumstances then that I order your detention in this federal

1  case, correct?

2            THE DEFENDANT:  Yes.

3            THE COURT:  I do so.  I find that Mr. Ciammetti has

4  waived his right to a contested detention hearing.  I order his

5  detention.  I will issue a written detention order.  He shall

6  remain in the custody of the United States Marshal.  I

7  anticipate receiving a written motion from Mr. Scheele.  I

8  anticipate issuing a written order for the evaluation.

9       Mr. Scheele, you're moving to continue the arraignment to

10  a later date?

11            MR. SCHEELE:  I so move, Your Honor.

12            THE COURT:  I'll grant that.  We'll reset the

13  arraignment at a later date.  I think we're done.

14       Mr. Ciammetti, do you have any questions?

15            THE DEFENDANT:  (No audible response given.)

16            THE COURT:  He's indicating no.  Thank you.

17            MR. SCHEELE:  Thank you, Your Honor.

18  * * *

19       (End of requested transcript.)

20                              -oOo-

21  I certify that the foregoing transcript is a true and correct

22  copy of the proceedings recorded on CD, as taken down by me

23  stenographically from the recorded proceedings, to the best of

24  my ability.

25

1   Date:   May 1, 2009

2
                                    S/Stacy L. Drohosky
3                                   S/STACY L. DROHOSKY
                                    Court Reporter
4                                   U.S. District Court

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25